UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

ALEXANDER CHARLES HARVEY-OGENTHO                                PLAINTIFF

v.                                          CIVIL ACTION NO. 5:24-CV-P152-JHM

ALEX HEARELL et al.                                              DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Alexander Charles Harvey-Ogentho, a prisoner proceeding *pro se*, initiated this 42 U.S.C. § 1983 action.  The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the following reasons, some claims will be dismissed, and others will be allowed to go forward.

Additionally, the Court considers three motions to amend the complaint (DNs 10, 11, and 16).

## I. STATEMENT OF CLAIMS

Plaintiff, a prisoner at the Kentucky State Penitentiary (KSP), names as Defendants in their official and individual capacities: Alex Hearell and Emma Lewis, KSP Unit Administrators; Tiffany Spurlock and Stanley Hagerdy, KSP case treatment officers; Berton Bare and Darren Larue, Internal Affairs (IA) captains; Allyson Lambert, Kentucky Department of Corrections (KDOC) Ombudsman; Jacob Bruce, KSP Deputy Warden of Security; Laurean Massey, KSP Deputy Warden of Programs; and Tracey Jordan, KDOC Director of Population Management. Plaintiff alleges that he was unconstitutionally denied protective custody (PC) at KSP in violation of the Fifth, Fourteenth, and Eighth Amendments.  According to the complaint, on April 4, 2024, Plaintiff sent a "letter of concern for my life, safety, and well-being" to Defendant Bare, advising

him of a "hit" having been placed on him by other KSP inmates, with whom he had fought when he and they were housed at Green River Correctional Complex (GRCC). He states that the fight is the reason he was transferred to KSP. He also explains that he was told by other inmates that he could either pay a $50 per week "yard tax" or "get stabbed." He informed Defendant Bare that he wanted PC or a transfer. Plaintiff did not receive a response, and on June 14, 2024, he sent a similar letter to Defendant Bruce. Plaintiff states that after he sent his letter to Defendant Bruce, Defendant Spurlock requested that he sign a protective-custody refusal form. In doing so, she failed to follow prison policy requiring documentation to be entered and "botched" the paperwork.

After he refused to sign to indicate that he had refused PC, Plaintiff alleges that Defendant Hearell received Plaintiff's request for PC and initiated an investigation but failed to follow prison policy and conducted his PC review hearing without including the proper personnel in the hearing. Plaintiff also alleges that Defendant Hearell reported false information to Defendant Bare, after which Defendant Bruce denied PC.

Plaintiff states that he was then released to general population on June 20, 2024, but was allowed to falsely believe that he was entering PC, as he was never notified that he was denied PC. He states that on June 22, 2024, he was "sucker" punched, causing him to fall down a flight of stairs and suffer a bloody nose. He states that after this occurred, he was taken to the restricted housing unit (RHU). According to Plaintiff, he then discovered that he had been "sucker" punched because of a "smaller hit" that had been placed on him.

Plaintiff also states that he received a note from an inmate who had jumped him at GRCC, which Plaintiff gave to an officer in front of approximately 40 other inmates, causing him to be labeled a "rat/snitch." He again requested PC, and a PC investigation was begun on August 22, 2024. A classification hearing was held with Defendants Lewis and Haggerty regarding his request

for PC.  Defendant Lewis contacted Defendant Larue who told him that Plaintiff could return to general population because no verification that his safety was at risk existed.  According to Plaintiff, Defendants Lewis and Haggerty ignored the facts demonstrating that he is at risk and denied Plaintiff PC on August 25.

Plaintiff's appeal from that decision was denied by Defendant Massey on September 10. He then appealed to Defendant Jordan, who also denied him PC.  He states that he wrote a grievance to Defendant Lambert about his request for PC classification on August 15 but had not received a response before he mailed his complaint on September 18.

Plaintiff alleges that Defendants' actions caused him to suffer "extreme anxiety, depression, loss of sleep, irritability, social paranoia," and to feel helpless. He states that he continues to refuse "the yard," resulting in disciplinary actions against him and feelings of isolation and depression.

As relief, Plaintiff requests compensatory and punitive damages and injunctive relief of permanent protective custody or emergency release on parole.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1) and (2).  When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  While a reviewing court must liberally construe *pro se* pleadings, *Boag v.*

*MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### A. Official-capacity claims

"[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). A state, its agencies, and state officials sued in their official capacities for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, the official-capacity claims against Defendants, employees of the Commonwealth of Kentucky, must be dismissed for failure to state a claim upon which relief may be granted.

### B. Individual-capacity claims

#### 1. Defendant Lambert

Plaintiff's only claim against Defendant Lambert is that she did not respond to his grievance. However, prisoners do not possess a constitutional right to a prison-grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to

unfettered access to prison grievance procedures."). Consequently, "there is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. Oct. 30, 2003) (citing cases). "Further, if the prison provides a grievance process, violations of its procedures . . . do not rise to the level of a federal constitutional right." *Weddle v. Dunbar*, No. 1:15CV-P9-GNS, 2015 WL 2213356, at *5 (W.D. Ky. May 11, 2015) (citing *Walker*, 128 F. App'x at 445). The Court will dismiss Plaintiff's claim against this Defendant for failure to state a claim.

### 2. Fifth Amendment

Because Defendants are state, not federal, actors, the Fourteenth rather than the Fifth Amendment applies. *See Scott v. Clay Cnty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). The Court will, therefore, dismiss Plaintiff's Fifth Amendment claim for failure to state a claim.

### 3. Due process claim

Plaintiff alleges that Defendants Bare, Hearell, Spurlock, and Bruce violated his due process rights when they failed to notify him that he had been denied protective custody and failed to provide him with the option to appeal in violation of various provisions of prison procedures and policies.

"Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest." *Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008); *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). Thus, Plaintiff fails to state a Fourteenth Amendment due process claim because the failure to follow procedure does not infringe a liberty interest. *Grinter*, 532 F.3d at 574-75; *see also Hursey v. Anderson*, No.

16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) ("[C]laims related to violations of prison policies do not state a constitutional violation[.]").

Substantive due process protects only against state action that is not otherwise proscribed by the plain text of other constitutional amendments. *See Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006) (reasoning that "[a]lleged conduct that does not implicate a constitutional right protected by another amendment will be analyzed under the substantive due process component of the Fourteenth Amendment"). Where a plaintiff has recourse to an "explicit textual source of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395 (1989), a more general claim of substantive due process is not available. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). Here, Plaintiff's allegations that he was not informed that he was denied PC arises under the Eighth Amendment as part of his claim that Defendants failed to protect him. The Court will dismiss Plaintiff's due process claims based on these allegations.

### 4. Failure-to-protect claims

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, including directing that they must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant knew would cause prisoners serious harm. *Id*. at 834; *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).

Upon review, the Court will allow Plaintiff's Eighth Amendment failure-to-protect claim to go forward against all Defendants except Defendant Lambert in their individual capacity.

### *C. Plaintiff's motions to amend/supplement*

#### *1. DN 10*

In his first motion to amend, Plaintiff seeks to amend the complaint to dismiss his request for injunctive relief and to increase the amount he requests as compensatory and punitive damages. Because no service on Defendants has yet occurred in this case,

**IT IS ORDERED** that the motion (DN 10) is **GRANTED**. *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course no later than: . . . 21 days after serving it[.]").

#### *2. DN 11*

In DN 11, Plaintiff seeks to add the following Defendants: Amy Fisher, KSP Unit Administrator; Gova Harper, IA officer; KDOC Classification Committee Chairpersons Kieryn Fannin and Jenifer Tracey; KSP Warden Laura Plappert; and first-name unknown Long. He alleges that on September 17, 2024, Fannin, Tracey, and Long denied him PC because, according to them, they had "'no correspondence received from inmate as of this date.'" Plaintiff alleges, however, that their denial of PC was unconstitutional because they did so without reviewing all the forms and materials related to his PC request.

Plaintiff also alleges that on August 15, 2024, Fisher initiated a PC investigation during which Harper told her that she recommended denial of PC because there was no verified information to support his claim. Fisher then recommended that PC be denied, and on September 19, she gave him a disciplinary action for failing to obey her direct order to go to the general population yard. Plaintiff states that Fisher knows of the risk to him and knew that her order to go to the yard would expose him to risk.

Because Plaintiff has already amended "once as a matter of course," the Court considers whether it should "freely give leave [to amend because] justice so requires." Fed. R. Civ. P. 15(a)(2). *See, e.g.*, *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). The Court will grant Plaintiff's motion to amend to add an Eighth Amendment failure-to-protect claim against Defendants Fisher, Harper, and Long in their individual capacities.

However, the Court will deny Plaintiff permission to add Plappert, KSP's Warden, as a Defendant. Plaintiff alleges that Plappert knew that he is at risk due to multiple letters he wrote, and he contends that, as KSP's warden, she has a duty to protect prisoners, yet, by not following prison policies, she failed to protect him. Although motions to amend a complaint are "freely" granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), "a district court should deny a motion to amend where the proposed amended complaint could not withstand a Fed. R. Civ. P. 12(b)(6) motion." *Massingill v. Ohio Adult Parole Auth.*, 28 F. App'x 510, 511 (6th Cir. 2002) (citation omitted). In other words, "[a] district court may deny a plaintiff leave to amend his or her complaint . . . when the proposed amendment would be futile." *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006).

Here, Plaintiff has not alleged that Plappert directly participated in the events related to his claims. In so finding, the Court notes that the doctrine of *respondeat superior* does not apply in § 1983 actions to impute liability to supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citing *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)). "[L]iability of supervisory personnel must be based on more than merely

the right to control employees." *Hays*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Accordingly,

**IT IS ORDERED** that Plaintiff's motion (DN 11) is **GRANTED in part** to add Defendants Amy Fisher, Gova Harper, Kieryn Fannin, and first-name unknown Long in their individual capacities and **DENIED in part** as against Laura Plappert.

Plaintiff's motion also seeks to correct previously identified Defendant Tracy Jordan to Jenifer Tracey and to correct the spelling of Defendant Hagerdy's last name.

**The Clerk is DIRECTED to terminate** Tracy Jordan as a Defendant, **to add** Jenifer Tracey as a Defendant, and **to correct** the spelling of Defendant Hagerdy's name to "Haggerty."

*3. DN 16*

In DN 16, Plaintiff seeks to amend his complaint regarding a November 5, 2024, attack on him by another inmate after Plaintiff's appeal of the denial of PC on September 17, 2024. According to Plaintiff, another inmate slipped out of his handcuffs and began to attack him, calling him a "check-in rat." He seeks to assert this failure-to-protect claim against Defendants Fannin, Harper, Tracey, Massey, Larue, Fisher, Haggerty, and Lewis for their denials of his requests for PC. He alleges that this attack demonstrates that, even in the RHU, he is not safe.

Because the alleged events took place after Plaintiff filed his complaint, the Court considers this motion to be one to supplement rather than to amend. "When a party wishes to plead facts about 'any transaction, occurrence, or event that happened after the date of' the party's initial

pleading, that party should rely on a supplemental pleading pursuant to Rule 15(d), not on an amended pleading pursuant to Rule 15(a)." *United States v. Napper*, No. 3:17-cv-1478, 2023 WL 2254511, at *2 (M.D. Tenn. Feb. 27, 2023) (quoting Fed. R. Civ. P. 15(d)). "Rule 15(d) affords courts the same level of discretion to permit supplements that Rule 15(a) affords to permit amendments." *Pharms v. Washington*, No. 1:22-CV-9, 2022 WL 3754502, at *7 (W.D. Mich. Aug. 30, 2022) (citation omitted).

**IT IS ORDERED** that Plaintiff's motion to supplement (DN 16) is **GRANTED**.

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's official-capacity claims, his Fifth Amendment claim, his claim against Defendant Allyson Lambert, and his claims for Fourteenth Amendment due process violations and violations of prison procedures and policies are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Clerk of Court is **DIRECTED to terminate** Allyson Lambert as a party to this action.

The Court allows Plaintiff's Eighth Amendment claims to continue against Defendants Alex Hearell, Emma Lewis, Tiffany Spurlock, Stanley Haggerty, Berton Bare, Darren Larue, Jacob Bruce, Laurean Massey, Jenifer Tracey, Amy Fisher, Gova Harper, and first-name unknown Long in their individual capacities.

The Court will enter a separate Service and Scheduling Order to govern the development of the remaining claims. In allowing these claims to proceed, the Court passes no judgment upon their merit or upon the ultimate outcome of this action.

Date: December 11, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
4414.009